# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **ARMADA (SINGAPORE) PTE LIMITED,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No. 10 C 5509 |
| **ASHAPURA MINECHEM LIMITED,** | ) ) |
| Defendant. | ) ) ) |

## MEMORANDUM OPINION AND ORDER

On August 15, 2011, plaintiff Armada (Singapore) PTE Limited ("Armada") and AMCOL International Corporation, Volclay International Corporation and American Colloid Company (the "AMCOL Garnishees") presented evidence[1] on the following two issues: the ownership of the excess stock proceeds and the interest due (if any) on the excess stock proceeds.[2] As explained below, I conclude that the AMCOL Garnishees owe the excess stock proceeds to Ashapura, not Chetan Shah, and therefore plaintiff is entitled to payment of the excess stock proceeds. However, plaintiff has not

---

[1] Both plaintiff and the AMCOL Garnishees submitted post-hearing briefs. Because I did not request such briefs and neither side sought permission to file them, I did not consider them.

[2] For a more detailed discussion of the background facts of this dispute, see my July 13, 2011 minute order.

met its burden with respect to the alleged thirteen percent interest on the funds.[3]

Turning first to the issue of ownership of the excess stock proceeds, I rely on a series of emails[4] introduced by Armada at the hearing to conclude that the AMCOL Garnishees owe the excess stock proceeds to Ashapura and not Chetan Shah individually. Plaintiff's Exhibit 1 at AMC001151 is a January 13, 2010 email from Don Pearson, Vice-President and Chief Financial Officer at AMCOL International Corporation, to Ajay Phalod, Business Development Manager at Ashapura. This email from Pearson reads:

> As agreed between AMCOL and Ashapura in 2009 and finalized in December, AMCOL's 950,000 shares of Ashapura were sold to Ashapura at Rs38. The price on the open market at the time of the sale was Rs 69.70. The excess price above Rs 38, after adjusting for selling costs, will be transferred to the account identified by Ashapura. AMCOL will absorb the US tax on the gain. Ashapura will forward the same amount in USD to AANV, within four weeks of AMCOL's initial transmission to the Ashapura named account, and the amount will be applied to debt that AANV has to AMCOL's subsidiary, AMCOL Minerals Europe Ltd. At today's exchange rate of 45.6, the amount approximates USD 653,000. AMCOL will transfer the amount at the Rs/USD exchange rate at the time of transfer.

This email, which post-dated the sale of stock in December 2009 by only a few weeks, provides compelling evidence that AMCOL agreed to

---

[3] Plaintiff has the burden of proving that the garnishees possess property belonging to the defendant. *See K/S A/S SEA Team v. Colocotronis (Greece) S.A.*, No. 76 Civ. 4019, 1978 LEXIS 16786, at *11 (S.D.N.Y. July 5, 1978).

[4] There was no written agreement documenting the agreement reached concerning the sale of the Ashapura stock. 8/15/11 Trans. at 9.

2

pay the excess stock proceeds to Ashapura. Chetan Shah is never mentioned in this email as a potential recipient of the proceeds.

There is other documentary evidence that AMCOL owed the excess stock proceeds to Ashapura, and not Chetan Shah. In Plaintiff's Exhibit 2, after a series of emails in July 2010 between Pearson and Phalod concerning the precise amount of the excess stock proceeds, Pearson then emailed Sejal Ghia at AMCOL asking "Can you confirm what the excess Ashapura proceeds is at this point, $635K or $643K?" Ghia responds, "Excess due to AML for Dec 2009 share sale = Rs 30,006,782 at today's fx rate 0.02141 = 642,445." *See* AMC000779. In this email exchange, Ghia stated that the excess stock proceeds were due to AML (Ashapura Minechem Limited), and there is no mention of the proceeds being due to Shah. Likewise, a memorandum entitled "AMCOL and Ashapura Excess Share Purchase" at AMC000756-57, which was an internal AMCOL document created at Pearson's direction, contained multiple references to Ashapura as the entity which was owed the excess share proceeds. The memo stated,

> On December 30, 2009, Ashapura purchased 950,000 shares from AMCOL at a total price of 69.70 rupees before Rs 129,725 in fees. As agreed by the parties, for any price greater than Rs 38, e.g., Rs 31.70 net of fees, AMCOL would forward this amount to Ashapura, who would then remit the amount to AANV to pay down debt by AANV to AMCOL. This amount totals Rs 30,006,782 and is referred to as the excess amount or excess proceeds. The share sale proceeds remain with Sharekhan, AMCOL's broker. Our agreement with Ashapura, requires payment upon receipt of the funds from the broker. There have been technical difficulties whereby the broker has not released the

3

>funds. Ashapura borrowed funds to purchase the shares at
>13%. AMCOL has an old note from Ashapura, relating to
>AVL, the note had been paid down to $109,619, however,
>interested [sic] had not been accrued since September
>2007. After adjusting for missing accrued interest at
>one month libor plus 100 bps, the current balance at June
>30, 2010 is $130,500. Considering the delay in receiving
>the funding for the share proceeds from the broker, AMCOL
>suggested that it credit Ashapura against the $130,500
>note for the interest Ashapura is incurring on its
>borrowing for the purchase of the excess share price.

This internal AMCOL memorandum clearly states that Ashapura is owed the excess stock proceeds and no where mentions that these funds should go to Shah personally.

Finally, in Plaintiff's Exhibit 4, a July 14, 2010 email from Sejal Ghia to Pearson and others at AMCOL, Ghia once again references the "net amount due to AML" (with AML referencing Ashapura Minechem Limited). This email also references the fact (as confirmed by the testimony of Pearson) that AMCOL's own internal accounting system listed "AML," not Shah, as the entity to whom the excess stock proceeds were owed.[5]

Further support for plaintiff's position can be found in Pearson's emails, in which he suggested that, instead of AMCOL making any cash payments to Ashapura for interest owed on the excess amount, AMCOL could instead reduce the amount *Ashapura* owed AMCOL on an outstanding note for $109,000. AMCOL has not put

---

[5] In addition, I note that all the emails received by Pearson and others at AMCOL were from Ashapura employees requesting that the excess stock proceeds be paid, and none were from Shah himself. This further supports the notion that Ashapura was due the excess proceeds.

4

forward any explanation as to why Shah, if he were indeed owed both the excess proceeds and the interest personally, would agree to allow AMCOL to reduce Ashapura's corporate debt. This suggestion by Pearson more logically supports the notion that AMCOL owed Ashapura, and not Shah, the excess stock proceeds.

In reaching this conclusion, I was not convinced by the testimony of Don Pearson. Pearson testified that the AMCOL Garnishees were obligated to pay the excess stock proceeds to Shah, as it was Shah who purchased the shares and borrowed the funds to effectuate the stock purchase. Over and over again, Pearson reviewed the numerous emails he authored which explicitly stated that Ashapura was owed the excess stock proceeds, and testified that those references to Ashapura were shorthand references to Shah. Put simply, in light of the number of references to Ashapura by multiple parties and the fact that AMCOL's own internal accounting system reflected the fact that the proceeds were owed to Ashapura, I did not credit Pearson's testimony.[6]

To counter plaintiff's evidence, the AMCOL Garnishees point to: (1) a September 29, 2009 email from Larry Washow (former CEO of AMCOL) to Don Pearson; and (2) a transcript of a January 22, 2010 quarterly analyst call. Turning first to the email, Washow stated, "Don[,] the

---

[6] Also noteworthy is the fact that Pearson's company would benefit greatly from a determination that the excess stock proceeds are not due to Ashapura. Testimony at the hearing revealed that Shah is no longer demanding return of the excess stock proceeds, and that the AMCOL Garnishees would keep this amount if plaintiff failed to prove its entitlement to the funds.

price difference I guess is actually Chetan's money so we probably can't do much but if it could be used to offset a bit of the Antwerp loan or if there is some way we could keep the difference that would be good. Larry." Even assuming I could properly consider Washow's statement, I do not read this email as providing conclusive evidence that the excess stock proceeds were owed to Shah personally. The most obvious problem with its reliability is Washow's use of the qualifier, "I guess." Given Washow's own obvious uncertainty, this email does not conclusively support the AMCOL Garnishees' position, especially in light of all the post-sale emails discussed above.

Second, the AMCOL Garnishees point to a transcript of a January 22, 2010 quarterly analyst call as support. Putting aside any issues of admissibility of this document, even if I did consider it, it also does not provide strong support for the AMCOL Garnishees. In this transcript, after being asked about the sale of Ashapura shares, Washow responds, "Yeah. We did go through the open market. The other owner ended up buying the shares as a block." AMC001124. Once again, Washow's reference to "the other owner" does not establish that Shah was owed the excess stock proceeds. This reference is too vague to establish anything.

Finally, AMCOL points to a number of pre-stock sale emails which reference negotiations over the stock sale with Shah. For example, in a June 26, 2009 email from Jayesh Doshi (former CFO of Ashapura) to Washow and Pearson, Doshi stated that "we have been discussing to purchase your shares either by Mr. Chetan Shah or family members or any other potential buyer. We have been able to procure some funding for purchase of shares and after my discussion with Mr. Chetan Shah,

6

we can look at buying the entire quantity at around Rs. 35/-." Garnishees' Exhibit 1 at AMC000546. This email presents no definitive evidence of who/which entity purchased the shares, as it refers to Shah, his family members, or "any other potential buyer." Further complicating matters is Doshi's use of the word "we." Since Doshi is employed by Ashapura, it is certainly conceivable that "we" refers to Ashapura and the reference to Shah (as Chairman of Ashapura) is to his role as negotiator for Ashapura. Nor am I convinced by the other emails identified by the AMCOL Garnishees which refer to Shah by name in the negotiations of the stock sale. *See, e.g.,* AMC000545 ("I think Mr. Chetan Shah's offer at this rate is fair to AMCOL"); *id*. ("if Chetan wanted to buy at least half of the stock at that price we could sell the rest in the open market"); AMC000542 ("I think that would put us in reasonable shape when the SEC comes back with questions – might also raise the pressure a bit on Chetan to buy it if he really wants to control more."; AMC000538 ("He said that Chetan can purchase the shares within a few days of us letting him know we are ready to sell."); AMC000547 ("if we sell at 38 rupees and the market is higher Chetan will pay us the market price then we need to somehow rebate the difference back to him"). Given Shah's controlling interest in Ashapura and his job as Chairman, it makes sense that AMCOL would refer to the individual negotiating on Ashapura's behalf. In addition, even if these emails suggested a more personal involvement by Shah in the stock deal, all of these emails were sent prior to the date of the sale. As noted above, there are numerous emails, sent after the sale was completed, which state that Ashapura was the buyer of the stock and was owed the excess proceeds. Given

7

that there is no written document to refer to here, I conclude that the emails which post-date the sale more accurately reflect the agreement concerning the stock sale and the excess proceeds.

With respect to the interest payments on the excess stock proceeds, I conclude that plaintiff has not met its burden. In his testimony, Pearson acknowledged that AMCOL offered to pay Ashapura thirteen percent interest on the excess stock proceeds. 8/15/11 Trans. at 25. The internal AMCOL memorandum makes clear that AMCOL's offer to pay interest was to make Ashapura whole for the thirteen percent interest it was incurring as a result of the loan it took out to buy back the shares from AMCOL. AMC000756-57. However, there is no evidence that a final agreement was reached between the AMCOL Garnishees and Ashapura. In an August 30, 2010 email from Pearson to Phalod, Pearson stated, "On the excess shares, AMCOL was willing to compensate Ashapura for the cost of interest, approximately $49K through July. I recommended simply reducing the balance on the note receivable from Ashapura. You noted that you may require a cash exchange. I can do either, but require your decision." AMC000748. While this email suggests that the parties were close to an agreement, it also indicates that their were certain terms which were still being negotiated and were not final. Without more, I cannot conclude that there was an agreement concerning interest payments.

Turning to the final calculation of funds owed to plaintiff, I conclude that the AMCOL Garnishees must turn over $687,356.52 to plaintiff. This figure represents $669,151.23 in excess stock proceeds (30,006,782 Rupees at the exchange rate in effect on April 6, 2011, the day that the excess stock proceeds were transferred from

8

India to the AMCOL Garnishees), see AMC000756-57, and the $18,205.29 owed by the AMCOL Garnishees to Ashapura, see 7/13/11 Minute Order.

Plaintiff's motion to recognize, confirm, enter judgment on, and enforce foreign arbitral awards [38] is therefore granted to the extent described herein, without prejudice to plaintiff's right to pursue recognition, confirmation, judgment on, and enforcement of the awards in any other actions for the outstanding balance of the awards. I direct that the property to be turned over by the AMCOL Garnishees to the plaintiff's attorneys shall not be subject to any further attachment or restraint. Upon turnover by the AMCOL Garnishees to plaintiff's attorneys, Bond Number 105483459, dated September 17, 2010, shall be cancelled.

                                          **ENTER ORDER:**

                                          _____
                                          **Elaine E. Bucklo**
                                          United States District Judge

DATED: August 29, 2011